Alexander Henry THUNDER HAWK, Jr., By and Through his Guardian ad Litem, Georg JENSEN; by and through his Conservators, Alexander Henry Thunder Hawk, Sr. and Iona Thunder Hawk; and Alexander Henry Thunder Hawk, Sr. and Iona Thunder Hawk, Individually, Appellants (Plaintiffs),

v.

UNION PACIFIC RAILROAD COMPANY, a Utah Corporation; and John Does I–X, Individually and as Agents, Servants and Employees of the Union Pacific Railroad Company, Appellees (Defendants).

No. 94–80.

Supreme Court of Wyoming.

March 8, 1995.

Ronald E. Triggs, Cheyenne, for appellants.

Bradley T. Cave of Holland & Hart, Cheyenne, for appellees.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellants Alexander Thunder Hawk, Jr., Alexander Thunder Hawk, Sr., and Iona Thunder Hawk appeal from the judgment entered on the jury verdict in favor of Appellee Union Pacific Railroad Company, from the order which denied Appellants' motion for a new trial, and from the judgment entered against them for costs.

We affirm.

### Issues

In their statement of the issues, Appellants present five issues for our review:

*Issue One:* The court's untimely hearings on pre-trial motions obscured the issues and distracted the court from the evidentiary matters which should have been presented to the jury.

*Issue Two:* Exclusion of evidence kept relevant evidence on the attractive nuisance doctrine and on punitive damage issues from the jury.

*Issue Three:* The handling of evidentiary questions and matters presented a one-sided view of this case to the jury and made it impossible for them to arrive at a just and fair verdict.

*Issue Four:* The instructions given the jury and the verdict form so confused the jury on the issues as to require them to ignore a substantial body of evidence relating to the learning disability of the minor plaintiff, and were tantamount to directing them to find for the defendant.

*Issue Five:* The finding of the jury was in direct contravention to the evidence produced at trial.

### Facts

The salient facts of this case are articulated in *Thunder Hawk by and through Jensen v. Union Pacific Railroad Company,* 844 P.2d 1045 (Wyo.1992). On July 20, 1989, six-year-old Alexander Thunder Hawk, Jr. (Alex) was involved in an accident while he was playing on a train located in Union Pacific's rail yard. Alex's left leg was severed as a result of the accident. Alex, by and through his guardian *ad litem* and his conservators, sued Union Pacific for negligence, gross negligence, and willful and wanton misconduct. His parents, Alexander Thunder Hawk, Sr. and Iona Thunder Hawk, also asserted claims for Alex's medical expenses and for negligent infliction of emotional distress. 844 P.2d at 1046.

The district court granted partial summary judgments in favor of Union Pacific, ruling (1) "that Alex was a trespasser or at most a bare licensee to whom Union Pacific owed a duty not to willfully or wantonly harm and that the attractive nuisance doctrine could not be invoked under the facts of the case to elevate the standard of care"; (2) "that no evidence existed to show that Union Pacific breached its duty not to willfully or wantonly harm Alex"; and (3) "that the parents could not maintain a claim for negligent infliction of emotional distress under the undisputed facts of the case." 844 P.2d at 1047.

Appellants appealed from the district court's orders, and this Court affirmed in part, reversed in part, and remanded the case for further proceedings. 844 P.2d at 1046. In that case, we adopted the RESTATEMENT (SECOND) OF TORTS § 339 (1965), which is generally referred to as the attractive nuisance doctrine:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

After adopting § 339, the Court elaborated on what a plaintiff is required to show in order to recover under that section:

To recover under § 339, a child trespasser must first demonstrate by a preponderance of the evidence at trial the existence of elements (a) through (d). If the child trespasser is successful in doing so, the duty of reasonable care under element (e) attaches to the land possessor. The child trespasser must then, as in any other negligence case, prove the elements of breach, proximate causation, and damages by a preponderance of the evidence.

844 P.2d at 1049. We held that genuine issues of material fact existed as to elements (a) through (d) of § 339 and reversed the summary judgment on the attractive-nuisance issue. 844 P.2d at 1049, 1051. We reversed the summary judgment on Alex's willful-and-wanton-misconduct claim but affirmed the summary judgment on the parents' claims for negligent infliction of emotional distress. 844 P.2d at 1051–52.

We remanded the case, and the district court held a jury trial. The jury returned a special verdict in favor of Union Pacific in which it answered the interrogatories as follows:

1. Is the place where the condition exists one which Union Pacific knows or has reason to know that children are likely to trespass?

_____ YES _√_ NO

2. Is the condition one of which Union Pacific knows or has reason to know and which Union Pacific realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children?

_____ YES _√_ NO

3. Did Alexander Thunder Hawk, Jr., because of his youth fail to discover the condition or realize the risk involved in meddling with it or in coming within the area made dangerous by it?

_√_ YES _____ NO

4. Is the utility to Union Pacific of maintaining the condition and the burden of eliminating the danger slight as compared with the risk to children involved?

_____ YES _√_ NO

5. Did Union Pacific fail to exercise reasonable care to eliminate the danger or otherwise to protect Alexander Thunder Hawk, Jr.?

_____ YES _√_ NO

6. Was Union Pacific's failure to exercise reasonable care a proximate cause of the accident?

_____ YES _√_ NO

7. Considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the following:

| | | |
|---|---|---|
| Alexander Thunder Hawk, Jr., Plaintiff | 95% | of fault |
| Union Pacific Railroad, Defendant | 5% | of fault |
| TOTAL | 100% | |

8. Without considering the percentage of fault found in Question No. [7], what total amount of damages do you find was sustained by Alexander Thunder Hawk, Jr., Plaintiff:

$ — 0 —

The district court entered a judgment on the jury verdict and ordered Appellants to pay Union Pacific's costs. The district court also denied Appellants' motion for a new trial. Appellants appealed from the district court's orders.

### Pretrial Motions

Appellants allege that the district court committed reversible error when it did not hear their pretrial motions in a timely manner. They also contend that the district court's rulings with regard to those motions were improper.

Appellants' pretrial motions were:

—Notice of objection to Union Pacific's designated witnesses and exhibits;

—Motion to strike the trial testimony of Union Pacific expert witness Jack Sanford;

—Notice of continuing objections to Union Pacific's designation of witnesses and exhibits;

—Motion to compel Union Pacific to produce witnesses and motion to strike Union Pacific's witnesses and exhibits;

—Motion to allow Appellants' expert witness, Dennis Bergquist, to inspect the site of the accident;

—Motion to strike Union Pacific's exhibits;

—Motion for an order setting a hearing;

—Motion to strike the trial testimony of Union Pacific witness Ed Smedley;

—Motion to strike the updated calculations of Union Pacific witness Everett Sechtem;

—Motion to allow Appellants to call J.C. Cox, who was designated as a Union Pacific witness, as their witness;

—Motion to strike Union Pacific expert witness Douglas Filter;

—Motion for an order setting a hearing on Appellants' motion to strike the trial tes-

timony of various Union Pacific witnesses;

—Motion to strike J.C. Cox as a Union Pacific witness;

—Motion to strike Union Pacific witness Sandra Walraven; and

—Motion in limine.

### A. Timeliness of Hearing

■ Appellants contend that the district court erred when it did not hear their pretrial motions prior to trial and in time for Appellants to take corrective measures to remedy Union Pacific's interferences with their discovery.

A district court has the power to control its own docket. *Bi–Rite Package, Inc. v. District Court of Ninth Judicial District of Fremont County*, 735 P.2d 709, 713–15 (Wyo. 1987). Appellants do not direct us to any rule of civil procedure which governs as to when a district court must hear pretrial motions such as those filed by Appellants. On the contrary, W.R.C.P. 16(d) requires district courts to hold final pretrial conferences "as close to the time of trial as reasonable under the circumstances."

The district court heard Appellants' pretrial motions just before the trial began. Taking into account the nature of Appellants' motions and the circumstances of the case, we conclude that the district court did not err by failing to hear the motions at an earlier time. Further, Appellants do not explain how they were prejudiced by the district court's decision to wait until just before the trial began to hear their motions. *See* W.R.C.P. 61; W.R.A.P. 9.04; *see also Casteel v. News–Record, Inc.*, 875 P.2d 21, 23 (Wyo. 1994).

### B. Propriety of District Court's Rulings

#### 1. ISSUES NOT SUPPORTED BY COGENT ARGUMENT

With regard to most of their fifteen pretrial motions, Appellants do not offer any argument, cogent or otherwise, to demonstrate that the district court erred when it did not grant their motions. We will consider only those issues which are supported with cogent argument. W.R.A.P. 7.01(f).

#### 2. MOOT ISSUES

Appellants suggest that the district court erred when it denied their motions to strike Union Pacific witnesses Douglas Filter and Sandra Walraven. Any issues with regard to the district court's rulings which pertained to Mr. Filter and Ms. Walraven are moot because Union Pacific did not call them to testify at trial. "[T]he mootness doctrine requires that a justiciable issue remain before the court throughout the duration of the suit." *Reiman Corporation v. City of Cheyenne*, 838 P.2d 1182, 1186 (Wyo.1992).

#### 3. J.C. COX

Union Pacific designated J.C. Cox as one of its witnesses. Appellants filed a motion to strike Mr. Cox from Union Pacific's witness list and a motion to add Mr. Cox to their witness list. The district court denied Appellants' motions.

■ Appellants maintain that the district court erred when it denied their motions because "the effectiveness of [Mr. Cox's] testimony was lost by refusing to allow the plaintiffs to use Mr. Cox as a witness in their case in chief." In the motion hearing before the district court, Appellants indicated that during Mr. Cox's deposition they learned that he had knowledge about children being present in the rail yard prior to the time when Alex was injured.

W.R.E. 611(a) provides:

(a) *Control by court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Under W.R.E. 611(a), the district court has wide discretion to control the presentation of witnesses and evidence at trial. *McCabe v. R.A. Manning Construction Co., Inc.*, 674 P.2d 699, 712 (Wyo.1983). We will reverse a district court's ruling on the presentation of

witnesses at trial only when an abuse of discretion has been shown.

> " 'A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.' "

*Roberts v. Roberts*, 816 P.2d 1293, 1297 (Wyo.1991) (*quoting Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980)).

*Glenn v. Glenn*, 848 P.2d 819, 821 (Wyo. 1993).

■ The district court did not abuse its discretion by refusing to grant Appellants' motions. Union Pacific could properly present Mr. Cox in its case in chief since Union Pacific had originally designated Mr. Cox as its witness and since Appellants did not give any concrete explanation as to how their case would be harmed if the district court did not grant their motions. Additionally, Appellants did not take advantage of their opportunity to question Mr. Cox on cross-examination; therefore, they cannot now show that they were prejudiced by the district court's rulings.

### Expert Testimony

#### A. *Expert Witness Designation*

■ Appellants argue that the district court erred when it refused to allow one of their expert witnesses, Richard Radecki, M.D., to testify about how Alex's learning disability affected his ability to understand warnings. The district court refused to allow the expert to testify on that matter because the offered testimony was beyond the scope of Appellants' expert witness designation for Dr. Radecki. The district court did not err.

By a pretrial order, the district court directed the parties to designate their expert witnesses' opinions by a certain date.

> [A]ny requirement of adherence to a pretrial order entered in accordance with our Wyoming Rules of Civil Procedure is a matter of discretion with the trial court.

Claims of error in that regard are examined under an abuse of discretion standard. *Oukrop v. Wasserburger*, 755 P.2d 233, 237–38 (Wyo.1988). The trial court also has discretion to construe the requirements in its own orders, which includes deciding whether the offered testimony falls within the expert's designation. 755 P.2d at 238.

Appellants did not specifically state in their submissions to the district court that Dr. Radecki would testify about how Alex's learning disability affected his ability to understand warnings. The designation included in the record presented to us on appeal stated:

> 4. Richard Radecki. Dr. Radecki is expected to testify in accordance with his trial deposition testimony and [about] the medical care and treatment provided to Alexander Thunder Hawk Jr. since that time. Medical records have been requested and will be provided upon receipt. Dr. Radecki is expected to testify about Alexander Thunder Hawk Jr.'s continuing problems with his prosthesis and the medical problems he can expect to face in the future.

Appellant's pretrial memorandum also indicated that Dr. Radecki would testify in accordance with his deposition. We have reviewed the transcripts of Dr. Radecki's depositions and can find no instance where he was specifically asked about his opinion on how Alex's learning disability affected his ability to understand warnings. The district court did not abuse its discretion by limiting Dr. Radecki's testimony to that which was specified in his expert witness designation.

#### B. *Federal Railway Administration Records*

■ The district court granted Union Pacific's motion in limine, prohibiting Appellants' liability expert, Dennis Bergquist, from testifying about certain Federal Railway Administration (FRA) records or giving his opinions as to the statistics contained in those records. The statistics were a compilation of railroad data which had been gathered over a ten-year period on nonemployee accidents. Mr. Bergquist had relied upon

those statistics in concluding that "there had been an 'explosion' of injuries" on Union Pacific's railway system. Appellants argue that the district court erred when it decided to exclude that evidence because

> [t]he Union Pacific Railroad Company provided that data to the Federal Railroad Administration; it was fully aware of the problems on its own system, and yet it allowed it to proceed without any significant effort being made to abate the problem of which it was aware. This matter not only went to the scienter of the railroad relative to injuries and fatalities, but also was important evidence relative to the issue of punitive damages.

Appellants do not argue that the statistics were admissible evidence. Instead, they assert that they should have been allowed to present the evidence to the jury pursuant to W.R.E. 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The decision as to whether or not to allow evidence to be presented to the jury rests within the sound discretion of the district court. *See Contreras by and through Contreras v. Carbon County School District # 1,* 843 P.2d 589, 595 (Wyo.1992); *Madison v. Marlatt,* 619 P.2d 708, 716 (Wyo.1980) (per curiam). If a proper foundation has not been laid, the district court may refuse to allow the evidence to be presented to the jury. *Ferris v. Myers,* 625 P.2d 199, 204 (Wyo. 1981); *see also Contreras by and through Contreras,* 843 P.2d at 595.

In order to establish a proper foundation pursuant to W.R.E. 703, the proponent of the evidence must show that the evidence is information of a type customarily relied upon by experts in the field and that the evidence is sufficiently trustworthy to make the expert's reliance upon it reasonable. MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6651 (interim ed. 1992);

*see also United States v. Mest,* 789 F.2d 1069, 1073–74 (4th Cir.), *cert. denied,* 479 U.S. 846, 107 S.Ct. 163, 93 L.Ed.2d 102 (1986).

The district court did not abuse its discretion by prohibiting Appellants' expert witness from testifying about statistics contained in the FRA records. Appellants did not make any attempt to establish a foundation for the information. They did not present any testimony to show that the statistics were facts or data of a type reasonably relied upon by experts in railroad safety when they are determining whether a railroad met its standard of care. *See* W.R.E. 103; *see also Contreras by and through Contreras,* 843 P.2d at 595.

### Depositions

#### A. *Robert Charging Hawk*

■ Appellants contend that the district court erred when it refused to admit the complete deposition of Robert Charging Hawk (Robert) into evidence at the trial after it had permitted Union Pacific to introduce a portion of that deposition. They argue that the complete deposition would have shown that Robert saw a child on board a locomotive just prior to Alex's accident, and they insist that Robert's deposition was relevant to prove their claim under § 339.

Robert was a young boy who was playing with Alex near the rail yard on the day that Alex was injured. During the discovery period, Robert was deposed, and his deposition was presented at the trial. Union Pacific filed a motion in limine to exclude the portions of Robert's deposition which pertained to him seeing a boy on board a locomotive. The district court granted Union Pacific's motion because it found that those portions of Robert's deposition were irrelevant.

W.R.C.P. 32 sets out the rules for using depositions at trial:

> (a) *Use of depositions.*—At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was

present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Wyoming Rules of Evidence;

. . . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

. . . . .

(B) That the witness is absent from the state, unless it appears that the absence of the witness was procured by the party offering the deposition;

. . . . .

(4) If only part of a deposition is offered in evidence by a party, an adverse party may require the offeror to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts.

. . . .

(b) *Objections to admissibility.*—Subject to the provisions of Rule 28(b) and subdivision (d)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.

The ruling on the admissibility of a deposition rests within the sound discretion of the trial court. *MMOE v. MJE*, 841 P.2d 820, 828 (Wyo.1992); *see also L.U. Sheep Company v. Board of County Commissioners of County of Hot Springs*, 790 P.2d 663, 673 (Wyo.1990). Generally, relevant evidence is admissible, and irrelevant evidence is not admissible. W.R.E. 402.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

W.R.E. 401.

Robert testified that the boy he saw on board the locomotive was accompanied by an adult who was "driving" the train. Section 339 pertains only to child trespassers. Since the boy was in the company of railroad personnel, he was not a trespasser, and his presence had no bearing on any element of § 339. Appellants argued to the district court that the boy's presence was pertinent to the "attraction" element of their claim. Appellants have misconstrued the requirements of § 339. Although § 339 is commonly referred to as the attractive nuisance doctrine,

the term "attractive nuisance" is somewhat of a misnomer. Section 339 of the RESTATEMENT (SECOND) OF TORTS does not require that a child be attracted to the land possessor's premises by a dangerous condition or instrumentality and that he be injured by the particular attraction. Nor does § 339 rely upon the legal fiction of "implied invitation" to elevate a land possessor's duty of care to child trespassers. Despite these recognized differences, the courts, including this one, continue to refer to injured-child-trespasser cases popularly as "attractive nuisance" cases.

*Thunder Hawk by and through Jensen*, 844 P.2d at 1048 n. 1. The district court did not abuse its discretion by excluding the portions of Robert's deposition which pertained to the boy he saw on board the locomotive because the testimony was irrelevant.

**B. *Jeremy Charging Hawk***

■ Jeremy Charging Hawk (Jeremy) was also playing with Alex near the rail yard shortly before Alex's accident. Jeremy's testimony was presented at trial through his deposition transcript. Appellants contend that the district court erred when it refused to allow them to read those portions of Jeremy's deposition to the jury which included comments Jeremy's mother made while she was present during the taking of Jeremy's deposition. They argue: "The court's ruling excluded the remarks from the mother that

directed, interfered with, and arguably influenced the testimony of this little boy."

Under the circumstances of this case, we cannot say that the district court abused its discretion by refusing to allow the mother's remarks to be admitted into evidence. Jeremy's mother clarified some of Jeremy's answers, and she told Jeremy that he did not have to answer certain questions. She also made some comments about what she had observed at the accident site. Most of the mother's comments did not fall within the definition of relevant evidence because they did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable" than it would have been without the evidence. W.R.E. 401.

Although some of the comments may have been relevant evidence, the district court properly excluded those comments because their probative value was "substantially outweighed by the danger of unfair prejudice . . . or misleading the jury." W.R.E. 403. The mother was not under oath when she made her comments. The jury could have improperly considered the information related by Jeremy's mother when it was making its determinations. Since Jeremy's mother was not a witness and had not been sworn to tell the truth, the district court properly excluded those portions of the deposition. *See generally Jennings v. State,* 806 P.2d 1299, 1304–05 (Wyo.1991).

### C. *Alexander Thunder Hawk, Jr.*

■ Appellants argue that the district court erred when it allowed Union Pacific to read portions of Alex's deposition to the jury during its opening statement and at the conclusion of its case in chief. They contend that admission of Alex's deposition was improper since he testified in person and was

subjected to cross-examination by Union Pacific. We disagree.

W.R.C.P. 32(a)(1) allows any deposition to be used against any party for any purpose which is permitted by the Wyoming Rules of Evidence. The statements which Alex made in his deposition were admissible because they were admissions by a party-opponent. W.R.E. 801(d)(2)(A).

### Damages

Appellants assert that the district court erred when it failed to admit Appellant's complete medical expenses and the State of Wyoming's subrogation claim into evidence. Appellants also argue that the jury erred when it failed to make findings of special and general damages for medical expenses.

In its answers to the interrogatories on the special verdict form, the jury determined that Appellants had failed to establish that Union Pacific owed a duty of reasonable care to Alex under § 339. Any error associated with the damages portion of the trial was, therefore, harmless and cannot constitute a basis for reversal. W.R.C.P. 61; W.R.A.P. 9.04; *see also Shisler v. Town of Jackson, Wyoming,* 890 P.2d 555, 558 (Wyo.1995).

### Jury Instructions

■ Appellants allege that the district court erred when it refused to give three instructions which they had offered.[1] We disagree.

In considering the validity of instructions to a jury, we must determine whether the instructions, taken as a whole, adequately advise the jury of the applicable law. . . . The ruling of a trial court on an instruction will not constitute reversible error unless there is a showing of prejudice, which connotes a demonstration by the complaining party that the instruction misled or con-

---

1. On appeal, Appellants present arguments for only two instructions. From our review of the parties' arguments on jury instructions, it appears that Appellants offered three instructions in the district court: (1) an instruction which used Wyo.Stat. § 37–9–1101 (Supp.1994) as its basis; (2) a willful-and-wanton-misconduct instruction; and (3) an instruction which covered stipulated facts. The district court refused to give Appellants' § 37–9–1101 and willful-and-wanton-misconduct instructions, but it incorporated the language which Appellants suggested in their proposed stipulated-facts instruction into another instruction which the district court gave to the jury. Appellants, therefore, have no basis for asserting that the district court erred with regard to the stipulated-facts instruction.

fused the jury with respect to the applicable principles of law.

*L.U. Sheep Company*, 790 P.2d at 672. *See also Little v. Kobos by and through Kobos*, 877 P.2d 752, 759 (Wyo.1994).

 Although the actual proffered instructions do not appear in the record on appeal, Appellants read their proposed instructions into the record at the jury instruction conference. The first instruction which Appellants offered tracked the language of WYO.STAT. § 37–9–1101 (Supp.1994):

> [E]xcept in cases of attractive nuisance, no person owning, operating, loading or unloading a railroad car or train shall be liable for any damages for the accidental death or injury of a person occurring while the person was riding a railroad car or train in violation of Wyoming statutes 37–12–104, or while the person was boarding or unboarding from the railroad car or train without the consent of the owner or operator of the railroad car or train.

The district court properly refused to give Appellants' proposed instruction. The statute immunizes railroads from claims which have been asserted by trespassers "[e]xcept in cases of attractive nuisance." Since this is an attractive nuisance case, § 37–9–1101 does not apply. The district court's refusal to give the instruction did not mislead the jury.

 Appellants also offered an instruction which pertained to willful and wanton misconduct. The district court refused to give that instruction because it concluded that no evidence had been presented to the jury which would justify the jury finding that Union Pacific had engaged in willful and wanton misconduct toward Alex.

" '[A] party is entitled to have a jury instruction upon its theory of the case but only if such theory is supported by competent evidence and a proper request for the instruction is made.' " *Bigley v. Craven*, 769 P.2d 892, 894 (Wyo.1989) (quoting *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1199 (Wyo.1987)).

Appellants argue on appeal that, if the district court had permitted Mr. Bergquist to testify about the statistics contained in the FRA records and to give his opinion that an " 'explosion' of injuries" had occurred on Union Pacific's railroad system, sufficient evidence would have existed to support the willful-and-wanton-misconduct instruction. We have already determined that the district court correctly excluded the statistical evidence and Mr. Bergquist's opinion relative thereto; accordingly, we conclude that the district court properly ruled that Appellants had not presented sufficient evidence to support their proposed instruction.

### Verdict

 Appellants assert that the verdict form which was presented to the jury was confusing and inaccurate. At the jury instruction hearing, Appellants argued that the verdict form should instruct the jury members that "it is their responsibility to independently determine the measure of damages" regardless of how they find on the liability issues. In response to Appellants' objection, the district court modified the verdict form by instructing the jury: "Without considering the percentage of fault found in Question No. [7], what total amount of damages do you find was sustained by Alexander Thunder Hawk, Jr., Plaintiff[?]" Appellants accepted the district court's change by stating that it was "a reasonable modification." Since the district court modified the verdict form in accordance with Appellants' request, Appellants cannot show any error or prejudice on appeal.

 Appellants also argue that the third interrogatory on the verdict form did not conform with this Court's decision in *Thunder Hawk by and through Jensen* because, although it instructed the jury to take Alex's youth into account when it was determining whether he had failed to discover the dangerous condition or realize the risk involved, it did not have the jury take Alex's learning disability, intellectual age, and other relevant facts into consideration. Appellants did not make this objection at trial; therefore, we apply the plain error standard. Since the jury answered the interrogatory in Appellants' favor, Appellants were not prejudiced; therefore, they cannot show on appeal that plain error resulted. *See Natural Gas Pro-*

**784**

*cessing Co. v. Hull,* 886 P.2d 1181, 1187–88 (Wyo.1994).

Appellants also contend that the verdict revealed that the jury was confused. In this argument, Appellants are asserting that the jury's verdict was inconsistent because it found that Alex was unable to comprehend the danger involved with trains and yet it found that he was comparatively negligent. We refuse to address this issue on appeal because Appellants failed to raise it in the district court before the jury was discharged.

> Failure to raise this matter before the jury was released, as provided for in WYO.STAT. § 1–11–213 (1988), results in waiver of the right to complain about inconsistencies or irregularities in the verdict. Moreover, because of the opportunity to correct the verdict offered by § 1–11–213, the complaining party will be held to have waived the error notwithstanding its degree of irregularity or impropriety.... [N]o matter how obvious the irregularity, the right to complain of the verdict was waived.

*Halliburton Company v. Claypoole,* 868 P.2d 252, 258 (Wyo.1994). *See also Big–O Tires, Inc. v. Santini,* 838 P.2d 1169 (Wyo.1992).

### Sufficiency of the Evidence

■ Appellants contend that the evidence adduced at trial did not sustain the jury verdict. We disagree.

> "The standard for reviewing the sufficiency of the evidence is well established. On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it."

*Kadrmas v. Valley West Homeowner's Association,* 848 P.2d 826, 828 (Wyo.1993) (citation omitted).

*Sannerud v. Brantz,* 879 P.2d 341, 344 (Wyo.1994).

■ Each of the jury's findings was supported by sufficient evidence. The jury rea-

sonably concluded that Union Pacific did not know or have reason to know that the place where the condition existed was a place where children were likely to trespass. The evidence revealed that in only a few instances had children been sighted trespassing in Union Pacific's rail yard and that most of those trespassings were in areas of the rail yard other than where Alex had been injured. The evidence produced at trial also established that the area where Alex was hurt was not easily accessible.

The jury properly found that Union Pacific did not realize and should not have realized that the operation of trains through the rail yard was an activity which could pose an unreasonable risk of death or serious bodily injury to trespassing children. The evidence showed that no child had been injured or killed in the rail yard within at least the last sixteen years.

The jury found in Appellants' favor on the third interrogatory by concluding that Alex had failed to realize the risk associated with playing on a train. Appellants cannot logically challenge the sufficiency of the evidence for that finding.

Sufficient evidence supported the jury's negative answer to the fourth interrogatory: "Is the utility to Union Pacific of maintaining the condition and the burden of eliminating the danger slight as compared with the risk to children involved?" As we stated above, the evidence indicated that the risk to children was not great, and Appellants fail to direct us to any evidence which demonstrated that the utility to Union Pacific of maintaining the rail yard was slight as compared to the risk to children.

Since the jury determined that Appellants had failed to establish that Union Pacific owed a duty of reasonable care to Alex under § 339, the remainder of its findings were immaterial. *Thunder Hawk by and through Jensen,* 844 P.2d at 1049.

### Violations of the Wyoming Rules of Appellate Procedure

It is apparent from the length of this opinion that Appellants' arguments illustrate a "shotgun" approach to appellate advocacy.

Almost every paragraph in the argument section of Appellants' brief contains a new and individual allegation of error. Many of Appellants' arguments are not presented in an organized or coherent fashion, and their briefs fail in many respects to comply with the Wyoming Rules of Appellate Procedure. *See* W.R.A.P. 7.01; *McNeiley v. Ayres Jewelry Co.*, 886 P.2d 595, 597 n. 2 (Wyo.1994).

Pursuant to W.R.A.P. 1.03, this Court can refuse to consider parties' issues on appeal when they violate the rules of appellate procedure. We have done our best to decipher Appellants' arguments; therefore, they cannot complain if some of their poorly presented contentions have not been addressed as fully in this decision as they would like.

A few examples of Appellants misguided arguments are in order: (1) Appellants contend that the extent to which Union Pacific can claim an attorney-client privilege between itself and Union Pacific employees is a tangential issue, but they do not offer any cogent argument as to how this issue affected the trial or their case; (2) Appellants paraphrase Cathy Donaldson's trial testimony with regard to Alex's intellectual capabilities, but they fail to put her testimony into context or to explain how it relates to any purported district court error; (3) Appellants complain about their inability to establish a foundation for Dr. Louis R. Brown to testify about Alex's learning disability, but they do not explain how the district court erred; and (4) Appellants complain that they were denied the opportunity to display exhibits to the jury, but they fail to present cogent argument as to why they should have been allowed to present those exhibits. This Court is not obliged to discuss any contentions which have not been supported by cogent argument. *Miller Land & Mineral Company v. State Highway Commission of Wyoming*, 757 P.2d 1001, 1003 (Wyo.1988).

## Conclusion

We have reviewed the entire record in this case and can reach only one conclusion: Appellants simply feel unhappy about the jury verdict. " 'Unsuccessful litigants often harbor these feelings.' " *Little*, 877 P.2d at 756 (quoting *Stevens v. Murphy*, 680 P.2d 78, 80

(Wyo.1984)). Appellants, however, received a fair trial, and the district court did not commit any errors which warrant reversal in this case.

Affirmed.