L. D. HYDE, Appellee,

v.

LAND–OF–SKY REGIONAL COUNCIL (formerly known as Region B Planning and Economic Development Commission), Appellant,

and

Ed Todd, James T. Ledford, William M. Ives, Charles H. Campbell, Boyce A. Whitmire, R. Curtis Ratcliff, William Powell, J. R. Henderson, W. A. Baxter, Hugh H. Roberson, W. J. Cathey, Jr., Francis E. Field, L. T. Sprinkle, Elizabeth Maxwell, George Penland, Margaret Slagle, Eugene C. Ochsenreiter, Jr., Defendants.

L. D. HYDE, Appellant,

v.

LAND–OF–SKY REGIONAL COUNCIL (formerly known as Region B Planning and Economic Development Commission), Ed Todd, James T. Ledford, William M. Ives, Charles H. Campbell, Boyce A. Whitmire, R. Curtis Ratcliff, William Powell, J. R. Henderson, W. A. Baxter, Hugh H. Roberson, W. J. Cathey, Jr., Francis E. Field, L. T. Sprinkle, Elizabeth Maxwell, George Penland, Margaret Slagle, Eugene C. Ochsenreiter, Jr., Appellees.

Nos. 76–1922 and 76–1923.

United States Court of Appeals, Fourth Circuit.

Argued March 14, 1977.

Decided Jan. 6, 1978.

Ronald C. Brown, Asheville, N. C. (Ronald W. Howell, Marshall, N. C., on brief), for appellant in No. 76–1922 and appellee in No. 76–1923.

Robert B. Long, Jr., Asheville, N. C. (Long, McClure & Dodd, Asheville, N. C., on brief), for appellee in No. 76–1922 and appellant L. D. Hyde in No. 76–1923.

Before HAYNSWORTH, Chief Judge, and WINTER and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This is a civil action for breach of an employment contract. Jurisdiction is based on diversity of citizenship.

Plaintiff Hyde was the Executive Director of the defendant Land-Of-The-Sky Regional Council (hereinafter Council) from March 1972 until his termination on September 5, 1973. Defendant is a regional planning commission organized under the laws of North Carolina.[1]

In March 1972, plaintiff was employed to be the Executive Director of the Council. He was told by the Council that he could work out the details of his employment with Roy Trantham, the Secretary of the Council, and one Goodson, its Chairman. Trantham told Hyde that the Council would like for Hyde's term of employment to correspond with the Council's fiscal year which

---

1. Before 1974, the Regional Commissions were organized pursuant to *N.C.Gen.Stat.* Ch. 153, Art. 23, §§ 153–276, et seq. Although the statute was rewritten and is now found in Ch. 153A, Art. 19, §§ 153A–391, et seq., the framework of the Regional Planning Commission is basically the same. The Commission is formed by the agreement by two or more municipalities or counties for the purpose of creating a body for coordinating regional economic development. Another local government may join the Commission with the concurrence of the members. Each member government has two representatives but only one vote in the affairs of the Commission. The activities of the Commission are financed in part by the member governments.

Only the Council has appealed.

ended June 30th. Trantham also told Hyde that before either the Council or Hyde could terminate the employment, it would be necessary to give the other party notice thirty days before the end of the fiscal year.

Shortly after Hyde began work, he became aware of a particular by-law of the Council, Article VIII, Section 5,[2] which provided that the Council could terminate the employment of the Executive Director at any time and without cause. Hyde was disturbed by this provision which appeared to conflict with what he thought the terms of his contract to be. Therefore, he sought to have the by-law interpreted by the Council. Trantham told Hyde that the by-laws meant that the contract was for year-to-year and the Council would not have to give reasons for failing to renew the contract at the end of a fiscal year.

In the elections of the fall of 1972, a new administration was elected in North Carolina. There were rumors that it wished Hyde .replaced with someone loyal to it. Because the nature of his work required close cooperation with the state government in Raleigh, Hyde's job became difficult. During 1973, some members of the Council became convinced that the Council's effectiveness would be impaired so long as Hyde was the Director. Accordingly, the Council offered Hyde a chance to resign. However, Hyde refused to resign unless the Council gave him a letter absolving him of all blame. Hyde maintained that the reason for the move to dismiss him was solely political. At a meeting on September 5, 1973, the Council voted to terminate Hyde's employment as Executive Director.

Hyde then filed this suit for breach of contract, seeking to prove the existence of an oral contract of employment, made by the Executive Committee of the Council and either authorized or ratified by the Council.[3] In order to prove the terms of the contract, Hyde introduced evidence, over defendant's objections, of the oral interpretation of the by-laws given by Mr. Trantham. He also showed, over objection, the terms of his 1972–1973 contract, contending that the contract for 1973–1974 was essentially the same.[4] Thus, Hyde's case rested on an alleged oral contract made with the Executive Committee. The Committee, he alleged, was authorized to make the terms agreed on, and, in any event, the full Council had voted to employ him under the contract agreed upon.

At the close of plaintiff's evidence, the Council moved for a directed verdict on the grounds that plaintiff had not proved the existence of a contract for a definite period; but that the evidence showed that the employment was for an indefinite period and terminable at will. Additionally, the motion asserted that the by-laws, Article VIII, Section 5, forbade the entering into a contract for a definite term, and there was no evidence of the modification of the by-law. Thus, it argued that the Executive Committee was not authorized to make such a contract, nor was the action ratified in compliance with the by-laws.[5] The motion was denied by the court and renewed at the close of all the evidence.

The case was presented to the jury on three issues, as agreed by the parties. They were:

2. "In addition to the Council officers above named, an Executive Director shall be employed to conduct the major business activities of the Council. Said Executive Director will be appointed by the Council to serve on a permanent basis, but may be removed at any time, with or without cause, by an affirmative vote of a majority of all Council delegations."

3. Hyde's position is that the contract sued upon was an extension or renewal of the 1972 contract. While there is testimony which may indicate that this contract was negotiated by three individual members on behalf of the full Council, the parties treat the agreement as made by the Executive Committee, and, ac-

cordingly, our discussion of the evidence of ratification is presented in that context.

4. Appellant's initial complaint is that the introduction of this evidence constituted prejudicial error. We believe this contention is without merit.

5. Article VIII, Section 6, reads, "The six principal officers and the Executive Director shall constitute the Executive Committee which shall have and may execute all the powers and duties of the Council but any actions thus taken shall be binding only when ratified by the Council."

(1) Did the defendant contract with the plaintiff as alleged in the Complaint?
(2) Did the defendant breach its contract with the plaintiff as alleged in the Complaint?
(3) What, if anything, is the plaintiff entitled to recover for breach of contract? [6]

The jury answered issues one and two in the affirmative and awarded plaintiff damages of $17,150.[7] Defendant then filed a timely motion for judgment notwithstanding the verdict or a new trial wherein it challenged the sufficiency of the evidence to show either a contract of employment for a definite period or the authority of the Executive Committee to enter into such a contract. The motion was denied, and the defendant appeals. Plaintiff cross-appeals, claiming error in the failure of the trial court to award prejudgment interest.

Defendant's main contention on appeal is that the district court erred in refusing to grant its motion for directed verdict made at the close of the evidence.[8] The Council claims the plaintiff did not show that the full Council entered into a contract for a certain period. Rather, it argues that the evidence shows only that the Executive Committee may have made such a contract. Citing the by-laws, it claims the Executive Committee was never authorized to make such a contract, and denies that the full Council ever ratified the allegedly unauthorized contract. Moreover, it points out that Hyde admits his knowledge of the by-laws, and, accordingly, is unable to claim that he relied on the Executive Committee's apparent authority. The essence of its claim is lack of ratification.

█ This argument is, however, unable to surmount the rule of FRCP 49. The verdict in this case is a special verdict, and the separate issues of authority and ratification were not submitted to the jury. Therefore, under Rule 49(a), defendant waived its right to have the issues tried by the jury by not demanding their submission to the jury before the jury retired. Concomitantly, under Rule 49(a) the trial court is deemed to have made a finding on the issue in accord with the judgment on the special verdict. The Council contends that the jury's decision cannot be justified unless the plaintiff proved either authority to make the contract in question or the ratification of the unauthorized contract. But the separate issues of agency and ratification were not submitted to the jury, and, assuming the Council to be correct in its claim that either is essential to the finding of liability, the district court is deemed to have found that the Committee was either authorized or its actions ratified by the full Council.

Appellant contends that such a finding is erroneous, and the district court should have directed a verdict in its favor. The criterion for directing a verdict, however, is whether "there are no controverted issues of fact upon which reasonable men could differ." *Poque v. Retail Credit Co.*, 453

---

**6.** Before reaching a decision, the jury returned to the court room and inquired of the court, "We members of the jury would like to clarify do we have to set an amount on the third question." The court responded, "If you reach that question, yes sir."

The Council maintains that the court, at this time, should have instructed the jury that it could find for the plaintiff on the first two issues and yet award only nominal damages or none at all. The Council argues that the failure to so instruct is a reversible error. However, the trial court's initial instructions had repeatedly stated the issue as it was phrased to the jury: "what, if anything," was the plaintiff entitled to recover. The jury was aware of the options before it, and we find no prejudicial error in the colloquy between the court and the jury.

**7.** Plaintiff asked for $17,850 in his complaint. He later admitted that he had earned some $700 during the period of the breach, which could have made his damages $17,150.

**8.** Appellant also contends that the trial court should have granted a directed verdict to any individual defendant who was not a member of the Council in 1973, when the Executive Committee gave Hyde the oral interpretation of the by-laws, Article VIII, Section 5. That contention is without merit. However, we express no opinion as to how liability should be apportioned among members of the Council, or whether a newer member has a right to be indemnified by the Council or the older members.

F.2d 336, 338 (4th Cir. 1972), cert. den., 409 U.S. 1109, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973). The question before us, then, is whether conflicting inferences could have been drawn from the evidence, or whether the facts point so strongly toward the conclusion that neither authority to contract nor ratification by the Council existed that no other finding could reasonably have been made.

If, in fact, the Executive Committee was not authorized to enter into a year-long contract with Hyde, the subsequent ratification of the contract would validate the agreement and make it enforceable against the Council. Therefore, if there are no grounds for reversal of the district court's denial of the motion for directed verdict on the issue of ratification, the issue of authority need not be discussed.

In examining the evidence in light of a motion for directed verdict, the non-moving party is entitled to have the evidence viewed in a light most favorable to it, *Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne,* 386 F.2d 193, 197 (4th Cir. 1967), and the directed verdict should be granted only if, without weighing the credibility of the witnesses, the court can draw only one conclusion from the evidence. *Id.*

Here, Hyde testified that the Commission authorized the Chairman and Secretary to negotiate the exact terms of his employment, as well as testifying that the full Council voted to acknowledge the contract made with the Executive Committee. If such were the case, the action of the Council would have ratified an unauthorized contract. See *Realty Acceptance Co. v. Montgomery,* 51 F.2d 636, esp. p. 639 (3rd Cir. 1930).

Of course, the Council offered evidence to rebut this contention, but we cannot say the Council's evidence might be believed while Hyde's testimony may not. Questions of witness' credibility are within the province of the factfinder.

Here, the jury did not decide the issues of authority and ratification. These issues were additional to those submitted to the jury by agreement. Therefore, under FRCP 49(a), the district court is deemed to have found the Council ratified the contract. We cannot say that such a finding was not supported by the evidence which was in conflict.

■ Defendant also contends that, assuming for argument, a contract was made, the contract was for an indefinite time and terminable at will. Under North Carolina law, the plaintiff must prove that the employment contract he is suing under is for a definite term. *Freeman v. Hardee's Food Systems, Inc.,* 3 N.C.App. 435, 165 S.E.2d 39, 42 (1969). Otherwise, the employment is terminable at the will of either party, and the plaintiff is entitled to no relief. The Council claims Hyde made no such showing, and it was therefore entitled to a directed verdict.

■ Hyde testified that he was hired for a term to end at the end of the fiscal year, with either party being able to terminate the contract upon notice given thirty days before the end of the term. If the plaintiff's evidence were believed, it would carry his burden of proving the existence of a contract for a definite term. Defendant's counsel cross-examined Hyde and introduced evidence to rebut his testimony. There was conflicting evidence from which conflicting inferences could be drawn, and the decision ultimately lay with the jury which in our opinion had evidence to support it. Its verdict should not be disturbed.

■ The next assignment of error involves the failure of the district court to instruct the jury on several issues which the defendant contends are implicit in the case. Such instructions were not offered; neither was their omission from the charge objected to. Ordinarily, that failure would preclude a complaint on appeal. FRCP 51. However, it argues that the omission of instructions on authority and ratification from the court's charge constitutes plain error prejudicial to their defense. See *Dudley v. Inland Mutual Insurance Co.,* 299 F.2d 637 (4th Cir. 1962).

As explained above, under FRCP Rule 49(a), defendant waived its right to have a jury decide those issues, and the district court is deemed to have decided them consistently with its judgment. There is, therefore, no error in failing to instruct the jury on issues left for decision by the court.

The Council's claim that Hyde's knowledge of the by-laws would preclude any recovery based on his reliance on the Executive Committee's apparent authority would likewise not require reversal under the facts of this particular case.[9]

We have considered the remaining assignments of error of the Council and are of opinion they are without merit.

Finally, we return to the plaintiff's cross-appeal. He contends the district court erred in awarding interest from the date of judgment rather than the date the contract was breached. We agree and reverse.[10]

■ While it is true that in North Carolina there has been a definite trend toward the allowance of interest in cases involving breach of contract, where the damages are ascertainable from the contract itself or from relevant evidence, and that in such cases interest should be allowed from the date of the breach, *Harris & Harris Construction Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 123 S.E.2d 590 (1962); *Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973), it is also true that if the amount owed cannot be determined with any degree of certainty until judgment is rendered, then a trial court does not err in failing to award interest from the date of the breach, *Vancouver Plywood Co. v. Godley Construction Co.*, 393 F.2d 295 (4th Cir. 1968) (applying North Carolina law).

■ In *Rose v. Vulcan Materials Company*, 282 N.C. 643, 194 S.E.2d 521, 540 (1973), the court said that when ". . . the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach." The court is of opinion that principle fits this case, for it believes the plaintiff's damages are ascertainable from the contract itself and relevant evidence.

Here, Hyde claimed that he had an oral contract of employment which paid $1785 per month for a year. Ten months of the term remained at the time of the breach, and he therefore claimed damages of $17,850 plus interest. The jury returned a verdict of $17,150, apparently giving credit for $600 or $700 Hyde had earned.

We do not think, as Hyde claims, that interest on the entire sum is due from the date of the breach, for interest would only have been payable on monthly salary payments as they became due.

We are of opinion that on remand the district court must allow pre-judgment interest on each installment of salary from the date it would have been due, less outside earnings.

The judgment of the district court is accordingly

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

9. The Council correctly states that Hyde could not have relied on the Executive Committee's apparent authority, relying on *Barger v. Krimminger*, 262 N.C. 596, 138 S.E.2d 207 (1964). However, in view of our decision concerning the ratification of the contract, any decision on the issue of apparent authority would not change the result in our disposition of the case.

10. The author of the opinion does not agree that the plaintiff should prevail on his cross-appeal. Under N.C.General Statute § 24–5, the plaintiff could have submitted the question of interest to the jury but did not. Under these circumstances, the fact finding made by the court under FRCP 49(a) should be deemed to have been made in accordance with its judgment. He thinks the finding by the district court that interest was not due until the date of the judgment is justified under *Vancouver Plywood,* page 299, is a finding of fact not clearly erroneous under FRCP 52(a), that the scope of possible damages ranged from the full amount claimed by the plaintiff to a lesser amount, and this even after the jury found the contract had been breached.