## AG SYSTEMS, INCORPORATED, Plaintiff–Appellant,

v.

## UNITED DECORATIVE PLASTICS CORPORATION; Ron Buck; Robert F. Williams, Defendants–Appellees.

### No. 93–1232.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1994.

Decided June 8, 1995.

**ARGUED:** Kathy Ellen Manning, Smith, Helms, Mulliss & Moore, Greensboro, NC, for appellant. Gary Hamilton Clemmons, Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, P.A., New Bern, NC, for appellees. **ON BRIEF:** Dayna J. Kelly, John J. Korzen, Smith, Helms, Mulliss & Moore, Greensboro, NC, for appellant.

Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Judge WILKINSON and Judge MICHAEL joined.

## OPINION

WIDENER, Circuit Judge:

Appellant AG Systems, Incorporated appeals from a judgment on a special verdict by way of interrogatories to the jury in favor of Defendants–Appellees United Decorative Plastics Corporation, Ron Buck, and Robert Williams (collectively, defendants) in this diversity action alleging violations of the North Carolina Trade Secrets Protection Act, N.C.Gen.Stat. §§ 66–152 to 66–162, and the North Carolina unfair-trade-practices statute, N.C.Gen.Stat. § 75–1.1. AG Systems also appeals the court's denial of AG Systems' motion for judgment as a matter of law. For the reasons set forth below, we affirm.

AG Systems develops and distributes products for sale in the automotive after-market (paraphernalia added after the production of a car), including the product that is the sub-

ject of this case, a chromefoiled plastic laminate that is attached to the side panels of vehicles to enhance the vehicles' appearance. AG Systems, together with Transfer Print, a chrome-foil manufacturer with which AG Systems had previously worked, invested significant research and development efforts in creating the laminate, which required precise specifications in order to satisfy the needs of AG Systems' customers. Transfer Print agreed prior to beginning the research and development that resulted in the laminate that it would be AG Systems' proprietary product. The laminate did not exist in the automotive after-market prior to its conception and manufacture by AG Systems and Transfer Print.

Buck, a Transfer Print employee at the time, was intimately involved in the research and development of the laminate. He signed an agreement with AG Systems, on behalf of Transfer Print, that the product would be AG Systems' proprietary product. After manufacture of the laminate had begun, Buck resigned from his position at Transfer Print and began working at United, which was principally owned by appellee Williams. Buck then negotiated an agreement on behalf of United whereby it would manufacture AG Systems' product. AG Systems would retain its proprietary interest in the product. In 1991, AG Systems learned that United was selling a plastic laminate the same or very similar to its proprietary product to Innovative Creations, Incorporated. AG Systems demanded that United stop selling the laminate to Innovative Creations, but United refused.

AG Systems instituted this diversity action in May 1992, alleging misappropriation of trade secrets, breach of contract and fiduciary duties, and unfair and deceptive trade practices under North Carolina law. The defendants answered, and United counterclaimed for payment of amounts owed to it for the authorized manufacture of AG Systems' product under the agreement negotiated by Buck. After a jury trial, presided over by a magistrate judge with the consent of the parties, in October 1992, the jury found that AG Systems did have trade secrets and that Buck and United did owe to AG Systems a

fiduciary duty as well as a duty under the secrecy agreements. Nonetheless, the jury returned verdicts for defendants on AG Systems' claims. The court denied AG Systems' post-verdict motions for judgment as a matter of law and for new trial and entered judgment for the defendants. This appeal followed.

On appeal, AG Systems contends that the court erred in formulating its special verdict interrogatories and in giving instructions to the jury by: (1) charging the jury that AG Systems had the burden of proving a violation of the trade secrets act by a preponderance of the evidence rather than by the production of "substantial evidence"; (2) charging the jury that the disclosure or sale of a trade secret violates the act, thus omitting the possibility that the use of another's trade secret may constitute a violation; and (3) charging the jury that the product sold by the appellees must have been the same as the product created by AG Systems in order to find an unfair trade practice under North Carolina law. Largely because of these alleged errors, AG Systems also contends that the court erred in denying its motion for judgment as matter of law.

## I. *The Burden of Proof*

■ AG Systems assigns as error the jury instruction that it was required to prove a violation of the trade secrets act by a preponderance of the evidence, rather than by "substantial evidence," as allegedly required by N.C.Gen.Stat. § 66–155. Not only did AG Systems fail to object to this instruction, it invited error when it proposed the preponderance-of-the-evidence instruction.

We have never held in this court that an appeal may lie from an invited error, see *United States v. Herrera,* 23 F.3d 74, 75 (4th Cir.1994); *Wilson v. Lindler,* 8 F.3d 173 (4th Cir.1993) (en banc); *American Ins. Co. v. Vann,* 118 F.2d 1004, 1005 (4th Cir.1941) (per curiam); 9A Wright & Miller, *Federal Practice & Procedure* § 2558, at 470–71 (1995), but AG Systems now asks us to make an exception to this rule by applying a plain-error doctrine to invited errors such as that allegedly made by the court in this case.

AG Systems cites *Stewart v. Hall,* 770 F.2d 1267, 1271 (4th Cir.1985), for the proposition that "the omission of the ordinary scheme of proof for an essential element of the cause of action is fundamental error undermining the integrity of the trial." It contends that because N.C.Gen.Stat. § 66–155 mentions "substantial evidence," the ordinary scheme of proof was omitted in this case, and it was thus forced to prove its case by a higher standard of proof than the statute requires. However, it is by no means clear that the ordinary scheme of proof was omitted in this case. And *Stewart* was not a case of invited error.

Section 66–155 of the trade secrets act states, "[m]isappropriation of a trade secret is prima facie established by the introduction of substantial evidence that the person against whom relief is sought" knew or should have known of the trade secret and had the opportunity to, or did, acquire, disclose, or use the secret without the consent of the owner. AG Systems argues that this statutory scheme imposes upon it only the burden of persuading the jury by substantial evidence that defendants misappropriated a trade secret, upon which, absent satisfactory rebuttal, it is entitled to relief.

Even if the use of the words "substantial evidence" in the North Carolina statute refers to a burden of persuasion rather than the quantum of evidence necessary to sustain a holding that a prima facie case has been established, the argument of AG Systems that a prima facie case requires a result is simply incorrect. In North Carolina "a prima facie case simply carries the case to the jury for determination and no more." E.g., *Owens v. Kelly,* 240 N.C. 770, 84 S.E.2d 163, 166 (1954). The federal rule is the same, regardless of which applies. *Wright v. Rockefeller,* 376 U.S. 52, 57, 84 S.Ct. 603, 605–06, 11 L.Ed.2d 512 (1964). We do not hold that there is an exception to the invited error rule. And in all events, even should there be an exception to the invited error rule, and even if the words "substantial evidence" as used in the statute refer to a burden of persuasion, we do not think that the substitution of the words "preponderance of the evidence," defined by the court at the instance

of AG Systems to be "a belief that what is sought to be proved is more likely true than not true," is an error of so great a magnitude in the face of acknowledged invited error that correction is necessary to preserve the integrity of the judicial process or prevent a miscarriage of justice. *Herrera,* 23 F.3d at 76.

## II. *Omission of the Word "Use"*

Under N.C.Gen.Stat. § 66–152(1), misappropriation of a trade secret is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent," unless the secret was derived independently, by reverse ·engineering, or from a person with the authority to disclose it. At trial, the court both read and submitted to the jury a number of interrogatories. Of these, interrogatories 2a, 3a, and 4a all asked of the jury the following question with regard to each of the three defendants respectively:

> Did the defendant ... know or should have known [sic] of AG Systems' trade secrets and *disclose or sell* AG Systems' trade secrets without the express or implied authority or consent of AG Systems? (emphasis added).

The jury answered "No" to questions 2a, 3a, and 4a, and the district court accordingly found that defendants did not misappropriate AG Systems' trade secrets. Although at trial AG Systems failed to object to interrogatories 2a, 3a, and 4a, it now argues that the magistrate committed plain error in formulating jury instructions that were contrary to section 66–152(1).

Initially, we are of opinion that in this circuit, there is no plain-error exception to a party's failure to object to the form of special interrogatories, and thus that AG Systems has waived this challenge on appeal. *Deadwyler v. Volkswagen of America, Inc.,* 884 F.2d 779, 782 (4th Cir.1989), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990), so held: " '[A] party who fails to object to the form of special interrogatories cannot complain for the first time on appeal.' " (quoting *J.C. Motor Lines, Inc. v. Trailways Bus Sys.,* 689 F.2d 599, 603 (5th Cir.1982)).

■ Not only is there no plain-error exception for failure to object to the form of the questions in a special verdict, just such a situation as is before us now is contemplated by F.R.Civ.P. 49(a). That rule provides in pertinent part that

> If ... the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to any issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

There is no doubt that the issue now argued on appeal was omitted without a demand that the court make a finding with respect to it. So AG Systems failed to make the demand as contemplated by the rule. When the district court entered its judgment on the special verdict against AG Systems and in favor of defendants, under Rule 49(a) that was a finding in favor of defendants authorized by the rule to be made by the court because the issue was omitted from those issues submitted to the jury. *Hyde v. Land-of-Sky Regional Council,* 572 F.2d 988, 992 (4th Cir. 1978); see also 9A Wright & Miller, *Federal Practice & Procedure,* Civil § 2507 (1995). Thus, we consider on appeal any omission of the word "use" from the questions asked to the jury in the special verdict form only as it may have been properly raised in any question as to the correctness of the failure of the district court to enter judgment for AG Systems as a matter of law. See *infra* Part IV.

### III. *The Use of the Word "Same" in the Unfair-Trade Charge*

■ In North Carolina, an unfair-trade-practice claim under N.C.Gen.Stat. § 75–1.1 requires proof of three elements: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to [plaintiff] or [plaintiff's] business." *Drouillard v. Keister Williams Newspaper Serv., Inc.,* 108 N.C.App. 169, 423 S.E.2d 324, 326 (1992), *cert. denied,* 333 N.C. 344, 427 S.E.2d 617 (1993). Under this standard, it is

for the jury to find the facts, after which the court determines as a matter of law whether defendants' conduct as found by the jury violates section 75–1.1. See, e.g., *Medina v. Town & Country Ford, Inc.,* 85 N.C.App. 650, 355 S.E.2d 831 (1987), *aff'd per curiam,* 321 N.C. 591, 364 S.E.2d 140 (1988).

■ In the instant case, the court by the verdict form asked the jury whether defendants had used "information, techniques, processes and ideas that belonged to AG Systems to manufacture and sell the *same* chromed plastic products that AG Systems sells." (emphasis added). AG Systems objected to this interrogatory and the instructions regarding it. The magistrate overruled the objections and the jury ultimately answered the interrogatory in the negative, thus finding that defendants committed no unfair trade practices.

AG Systems argues on appeal that under the North Carolina unfair-trade-practices statute, which has been described as prohibiting any conduct that a court of equity would find unfair, see *Harrington Mfg. Co., Inc. v. Powell Mfg. Co., Inc.,* 38 N.C.App. 393, 248 S.E.2d 739, 744 (1978), *cert. denied,* 296 N.C. 411, 251 S.E.2d 469 (1979), it is not necessary that the defendant's product be the same as the embodiment of plaintiff's trade secrets; it is sufficient, the argument goes, that the two be "very similar," and that the defendant have used the plaintiff's trade secrets to make its product. AG Systems thus claims that the court erred in overruling AG Systems' objection and submitting the interrogatory to the jury using the word "same." Again, we disagree.

Section 75–1.1 of the North Carolina General Statutes broadly prohibits unfair competition, and thus the question is not merely whether the interrogatory adequately reflects the law, but whether the court's question to the jury adequately encompassed the scope of AG Systems' theory of the case. The question is whether AG Systems' claim was that defendants had made the same product or a similar one. A review of the record makes clear that plaintiff intended to rely on the former theory. Thus, the court did not err because it conformed the inter-

rogatory to the scope of AG Systems' claims against the defendants.

On October 5, 1992, approximately one week before the trial began, AG Systems filed with the court a list of proposed jury instructions. Its proposed jury instruction regarding the unfair-trade-practices claim read as follows:

Did defendants do one or more of the following:

(1) Breach their promise not to manufacture and sell plaintiff's chromed plastic products to anyone else;

(2) *Use information, techniques, processes and ideas that belonged to AG Systems to manufacture and sell the same chromed plastic products that AG Systems sells?* (emphasis added).

On October 20, 1992, during trial, fifteen days after AG Systems filed its proposed jury instructions, it objected in open court to the court's adoption of the exact language it had suggested two weeks earlier. Defense counsel pointed out to the court that, "[a]s a matter of fact, I think that is what was in the unfair trade practices issue submitted by the plaintiff." AG Systems responded by explaining that, "[i]t may well have been and I'm asking in light of what has come out on the stand, to conform that to the evidence."

In its opening statement to the jury, AG Systems emphasized that the product being marketed by defendants "was, in fact, the *same product* that [AG Systems] was out there selling.... [AG Systems] called Ron Buck and said you are selling this product to ICI, I had it tested, it's the *same product* that you are making for me...." In concluding its opening statement, AG Systems reiterated: "[W]hen all the evidence has been presented we will have proved to you that this chrome plastic ... is [AG Systems'] trade secret product.... [W]e believe that you will be able to find that *it was [AG Systems'] product; that the defendants were wrong to sell it to other people.*" In her closing argument, AG Systems' counsel again summarized her opening statement, stating that she had "told you that we would show you that [AG Systems] had entrusted Ron Buck with a very valuable possession, with [its] new product. And I told you that I would show you that the *defendants stole that product and gave it to other people.* ... I believe that the evidence we have presented in this courtroom has done exactly what we predicted it would do." (emphasis added). Toward the end of the closing argument, in explaining the court's verdict form to the jury, AG Systems' counsel again stated that, "we believe that the evidence is clear that Mr. Buck and Mr. Williams misappropriated *this product; they took it and they sold it to ICI.*" Later, in closing rebuttal, its counsel stated that AG Systems had "said to [defendants], you're selling *my product* to other people, you're breaching our agreement; ... [T]hey knew what they were doing was wrong. They knew they were *stealing the product* ...." (emphasis added).

In short, it appears from the record, despite AG Systems' argument to the contrary, that the theory of its unfair-trade-practices claim was that defendants did manufacture or sell the same product that AG Systems sells. We have found nothing significant in the record to support AG Systems' contention that it sought to prove that defendants used AG Systems' trade secrets to produce and sell a similar product.* The overwhelm-

---

* AG Systems' counsel did at one point elicit testimony from one DeRossett, President of AG Systems, stating that the product United was selling to Innovative was "just generally similar in every way" to AG Systems' product. However, it is clear from the context of this statement that the similarity between the two products was not the key issue in the case. Prior to making the above statement, DeRossett had stated that, "[w]e sent the product [that Innovative had bought from United] to an independent testing laboratory.... [T]he laboratory reported that the product that we obtained from ICI was *the exact same product that Mr. Buck was making for us.*" (emphasis added). Defendants objected to this statement, and the objection was, of course, sustained.

Plaintiff's counsel had presented DeRossett with a piece of the actual product that ICI had bought from United and asked if it was similar to AG System's product, to which DeRossett responded with the above quoted statement. In context, it is clear that AG Systems would have preferred to elicit the testimony to which objection was sustained, namely that Innovative's product was the same as AG Systems', but was forced to settle for the less-powerful testimony that in DeRossett's own visual estimation, Innovative's product was similar to AG Systems'. We

ing evidence, gleaned from AG Systems' proposed jury instructions and its opening and closing statements, is that it intended to show that defendants manufactured and sold the same product that AG Systems sells. We are of opinion that the court did not err in so concluding and in retaining the word "same" in its verdict form.

### IV. Conclusion

Finally, AG Systems argues that the court erred in not entering judgment for it as a matter of law.

The essence of the argument is largely based on the discussion of the points we have previously considered in this opinion. In addition, AG Systems argues that there was evidence sufficient to support a jury verdict and a judgment by the court in its favor. Even if that is true, a question we do not reach, we are of opinion the district court was correct in its holding that the evidence in this case did support the jury verdict, and also we are of opinion there was sufficient evidence in the case to support the entry of judgment for the defendants.

AG Systems did not argue in its motion for judgment as a matter of law, see Record IV docket entry 83, ¶¶ 3-4, and has not argued on appeal that the district court's implicit finding that defendants did not use AG Systems' trade secrets was clearly erroneous. See *supra* Part II. The district court found in its order denying AG Systems' post-trial motions that there was evidence to support both AG Systems' and defendants' positions, and that "[r]easonable minds could have differed as to whether the defendants were using AG Systems' trade secrets...." JA I 158. Even if AG Systems had argued that the evidence does not support the district court's finding that defendants did not use AG Systems' trade secrets, we would hold after review of the record as a whole that this finding was not clearly erroneous and thus that the district court did not err in refusing to grant AG Systems' motion for judgment as a matter of law on the misappropriation claim.

are of opinion that mere similarity between the two products quite clearly was not the theory of AG Systems' unfair-trade-practices case. It has

The judgment of the district court is accordingly

*AFFIRMED.*

directed us to no evidence of its intent to elicit testimony regarding the similarity, as distinguished from the identity, of the two products.