2004 WY 86

**WERCS, a Wyoming corporation, dba Wyoming Financial Group, Appellant (Defendant),**

v.

**Michael R. CAPSHAW, Appellee (Plaintiff).**

No. 02–185.

Supreme Court of Wyoming.

July 20, 2004.

Representing Appellant: Timothy M. Stubson of Brown, Drew & Massey, LLP, Casper, Wyoming; and J. Michael Tabor, West Palm Beach, Florida. Argument by Mr. Tabor.

Representing Appellee: Mark W. Gifford, Casper, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   In this wrongful employment termination case, the jury, having received appropriate instructions of applicable Wyoming employment law and a special verdict form, returned a special verdict finding that the employer had breached an oral employment contract which required cause for termination, and awarded the employee $223,656.00 as damages. On appeal, the employer assigns error in the trial court's pretrial summary judgment determination that the employee could advance at trial the doctrine of substantial performance to counter the employer's affirmative defense that the statute of frauds required that a contract incapable of being performed within one year must be in writing and signed by the party to be bound. We affirm.

## ISSUES

[¶ 2]   The employer states the issues on appeal to be:

1.   Whether the district court erred in applying the substantial performance doctrine to an employment agreement governed by the presumption of at-will employment.

2.   Whether in light of the equitable principles underlying the doctrine of substantial performance, the district court erred by applying it in a case where [employee] was paid for the performance he provided.

The employee counters with this statement of the issues:

1.   Can [employer] raise an issue on appeal that it waived by virtue of its failure to move for judgment as a matter of law in the trial court?

2.   Did the statute of frauds apply to a contract of employment of indefinite duration?

3.   Does the statute of frauds apply to a contract of employment that could be performed within one year, i.e., if [employee] were terminated for cause?

4.   Even if his contract were for a specific duration, does [employee's] part performance take the contract out of the statute of frauds?

5.   Do the equities favor enforcement of [employee's] contract of employment?

## FACTS

[¶ 3]   The employer, Wyoming Employee Resource Capital and Service (WERCS), is a Wyoming corporation, doing business as Wyoming Financial Group, with its home office in Casper, Wyoming. WERCS serves as a holding company for a number of subsidiaries including Wyoming Financial Properties (WFP). In the spring of 1995, WERCS was acquiring ownership of a number of properties, performing remodels on properties, and negotiating to manage other buildings. Because of this business activity and the growth of WFP, its properties subsidiary, WERCS wanted to hire a manager for WFP. Robert Moberly, WERCS' chief operating officer, talked to Michael R. Capshaw about taking the position as manager of WFP. At the time of their discussions, Capshaw owned a small residential construction company. The two men discussed the matter several times before Capshaw agreed to take the position. At the final meeting between the two men in Moberly's office, Moberly gave Capshaw a sheet of paper on which Moberly had written separate columns outlining salary, bonus, and contributions to an employee stock option plan for the first five years of employment as manager of WFP. Other figures which Moberly had written on the sheet of paper projected compensation if certain contingencies were met, such as WFP's acquisition of additional property management contracts. The two men discussed Moberly's

notations on the sheet of paper, and Capshaw accepted Moberly's offer on behalf of WERCS to become WFP's manager. Although Capshaw signed the sheet of paper, neither Moberly nor any other WERCS representative did. WERCS and Capshaw agree that theirs was an oral contract of employment. During Capshaw's employment with WERCS from March 1995 to June 1998, his duties as manager, and later as president, of WFP included handling leasing arrangements and tending the needs of tenants in the office buildings owned by WFP, overseeing extensive remodeling in WFP's buildings, remodeling homes owned by WERCS' executives and their relatives, and undertaking construction of several townhomes that would eventually be offered for sale to the public.

[¶ 4] In June 1998, WERCS fired Capshaw because of alleged deficiencies in his work performance including his discretionary spending on tree trimming, his work on two remodeling projects, his voiced opposition to WERCS' purchase of a check-cashing business which was owned by Moberly's wife and sister-in-law, and his alleged plot to set up a WERCS' executive on an unauthorized-practice-of-law claim.

### Procedural Background

[¶ 5] Following his firing, Capshaw sued WERCS for wrongful termination of employment without good cause. In his complaint, he sought relief under five claims: breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, retaliatory firing in violation of public policy, and wasting corporate assets. With respect to the breach of employment contract claim in his complaint, Capshaw averred, among other things, that WERCS offered and he accepted employment for a minimum of five years with compensation as embodied on the sheet of paper on which Moberly had written such compensation information and which Moberly had given to him at their meeting in March 1995 at Moberly's office. Capshaw also averred, among other things, that an implicit term of the job offer was that WERCS would not terminate his employment without good cause during the initial

five years and for so long thereafter as Capshaw satisfactorily preformed his job duties. Finally, Capshaw averred, among other things, that WERCS wrongfully fired him without warning or cause, giving as reasons several alleged deficiencies in his work performance.

[¶ 6] WERCS filed an answer and asserted a counterclaim. In that part of its answer which addressed Capshaw's breach of employment contract claim, WERCS claimed, among other things, that Capshaw was an employee at-will, and WERCS denied that his employment could not be terminated without good cause during the initial five years and as long as he satisfactorily performed his job duties. WERCS admitted that it had fired Capshaw but denied it had wrongfully fired him. WERCS pleaded a number of affirmative defenses, one of those being that Capshaw's claims were barred by the statute of frauds.

[¶ 7] The parties engaged in discovery, after which WERCS moved for summary judgment on Capshaw's five claims. With respect to the breach of employment contract claim, WERCS argued that Capshaw had alleged he was hired for a specific term of five years, *i.e.*, an employment contract of definite duration; but WERCS maintained that Capshaw's employment was for an indefinite duration and he was, therefore, an at-will employee whom WERCS could fire with or without a reason. Arguing in the alternative, WERCS contended that, even assuming Capshaw's employment was of five years definite duration, and not of indefinite duration as WERCS' asserted, a provision of Wyoming's statute of frauds, Wyo. Stat. Ann. § 1–23–105(a)(i), required a writing signed by the party to be bound, namely WERCS, or the contract would be deemed void. Because no such writing existed in this case, WERCS reasoned, Capshaw's claim failed. Next, WERCS argued that the doctrine of substantial performance, as an exception to the application of the statute of frauds, was not recognized under Wyoming law in the case of a performance-of-services contract, such as an employment contract.

[¶ 8] In Capshaw's response to WERCS' argument on the breach of employment con-

tract claim, Capshaw did not contend that the employment contract was one of definite duration; rather, referencing his affidavit attached to his memorandum in opposition to WERCS' summary judgment motion, Capshaw stated that at their meeting in Moberly's office in March 1995, Moberly gave him a sheet of paper which showed his guaranteed compensation and said that Capshaw was guaranteed that compensation for the first five years of his employment and that his compensation could only increase after the first five years. Capshaw also argued that WERCS' statute of frauds affirmative defense failed because he substantially performed his employment duties for more than three years before WERCS wrongfully fired him. He also argued that whether substantial performance occurred was a question of fact for the jury to decide at trial.

[¶ 9] At the conclusion of the summary judgment hearing, the district court denied WERCS' motion with respect to Capshaw's breach of employment contract claim. Identifying the primary issue to be "whether there has been sufficient substantial performance to remove this from the statute of frauds as an implied or oral contract," the district court rejected WERCS' argument of the inapplicability of substantial performance, stated that the court could appropriately consider substantial performance, and concluded that "all of these matters involving substantial performance are either questions of fact or mixed questions of law or fact for a jury to resolve...."

[¶ 10] With respect to WERCS' summary judgment motion on Capshaw's other four claims, the district court denied it on the promissory estoppel claim, granted it on the breach of the implied covenant of good faith and fair dealing claim, granted it (only to later reinstate it) on the retaliatory discharge claim, and did not rule on the wasting corporate assets claim because Capshaw had withdrawn it.

*Trial*

[¶ 11] The parties tried the case to a jury on Capshaw's claims of breach of employment contract, promissory estoppel, and retaliatory discharge in violation of public policy and on WERCS' counterclaim that Capshaw had violated his duty of good faith and loyalty to WERCS. The district judge thoroughly instructed the jury on the applicable law. WERCS did not object to any of these jury instructions and, on appeal, does not assign any error about these jury instructions. After deliberating on the verdict, the jury returned its verdict on the special verdict form provided by the district court. WERCS did not object at trial to that special verdict form and, on appeal, does not assign any error about that special verdict form.

[¶ 12] On the special verdict form returned by the jury, under the heading "Breach of Contract Claim," the jury answered "yes" to the single question posed: "Was there a contract of employment between Michael Capshaw and [WERCS] that required good cause for discharge?" Following the instructions on that special verdict form, the jury proceeded to Question 5 on the special verdict form, thus not answering the questions under either the "Promissory Estoppel" heading or the "Violation Of Public Policy" heading. At Question 5, the jury answered "No" to the question: "Did [WERCS] have good cause to discharge Capshaw?" Following the instructions on the special verdict form, the jury proceeded to Question 6 and answered that $223,656.00 was the amount of damages Capshaw suffered because of WERCS' actions. Following the instructions on the special verdict form, the jury proceeded to Question 7, which concerned WERCS' counterclaim, and answered that Capshaw did not violate his duty of good faith and loyalty to WERCS. Again following the instructions on the special verdict form, the jury proceeded to Question 9 and answered that Capshaw did not receive payments from WERCS to which he was not entitled.

[¶ 13] The district court entered its judgment on the special jury verdict. WERCS has timely appealed, raising the issues earlier identified.

## DISCUSSION

*Standard Of Review*

■ [¶ 14] WERCS asserts that its appeal addresses the district court's summary

judgment determination of law concerning the applicability of the statute of frauds generally and substantial performance specifically. *Wilkinson v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 991 P.2d 1228, 1233 n. 3 (Wyo.2000). A determination of law is, of course, subject to *de novo* review by this Court.

[¶ 15] Capshaw disagrees with the standard of review advanced by WERCS because Capshaw disagrees with WERCS' view of the case in light of the special verdict returned by the jury. Because the jury found on the special verdict form that Capshaw had an employment contract that could be terminated only for good cause and that WERCS did not have good cause to terminate that contract, Capshaw asserts that this Court should apply a sufficiency-of-the-evidence standard of review. *Daley v. Wenzel*, 2001 WY 80, ¶ 24, 30 P.3d 547, ¶ 24 (Wyo.2001).

[¶ 16] That the district court and the parties submitted a special verdict under W.R.C.P. 49(a) to be answered by the jury is of paramount importance in our resolution of this appeal. Neither party, however, has addressed that rule and that importance. We must, however, because the rule establishes the standard of review which we must apply in this appeal. The subject of special verdicts is addressed in W.R.C.P. 49(a), which is similar to its federal rule counterpart. Under the pleadings and evidence in this case, several issues of fact emerged at trial, most notably whether the oral employment contract was at-will, was of indefinite duration, was of definite duration (five years), and whether there was substantial performance if the contract was of definite duration of more than one year. Special findings on each of these issues of fact could have properly been made had the special verdict form so provided. Our inspection of the special verdict form submitted by the district court and the parties to the jury reveals, however, that some of these issues of fact raised by the pleadings and by the evidence were omitted. The only issues of fact upon which the jury was to make special findings concerning Capshaw's breach of employment contract claim and WERCS' defenses to that claim were "[w]as there a contract of employment ... that required good cause for discharge?" and "[d]id [WERCS] have good cause to discharge ... Capshaw?" Omitted issues of fact were "was the oral employment contract at-will," [1] "was the oral employment contract of indefinite duration," "was the oral employment contract of definite duration (five years)," and "if the oral employment contract was of definite duration (five years), was there substantial performance by Capshaw." Under W.R.C.P. 49(a), if any issue of fact raised by the pleadings or by the evidence is omitted from the special verdict form, "each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury." Further, the trial court may make a finding as to an issue of fact omitted without such demand. W.R.C.P. 49(a). But, if the trial court fails to do so, the trial court "shall be deemed to have made a finding in accord with the judgment on the special verdict." *Id.* Our research has not found any Wyoming cases involving the application of W.R.C.P. 49(a)'s provisions to a situation like the one before us in this appeal. Our research has found, however, several federal cases involving the application of F.R.C.P. 49(a)'s provisions to situations somewhat similar to those here. Because of the similarity between W.R.C.P. 49(a) and F.R.C.P. 49(a), we find these federal cases helpful. They are *Ansin v. River Oaks Furniture, Inc.*, 105 F.3d 745 (1st Cir. 1997); *AG Systems, Inc. v. United Decorative Plastics Corp.*, 55 F.3d 970 (4th Cir. 1995); *Hiltgen v. Sumrall*, 47 F.3d 695 (5th Cir.1995); and *Hyde v. Land–of–Sky Regional Council*, 572 F.2d 988 (4th Cir.1978).

[¶ 17] By the pleadings and by the evidence, WERCS maintained that the oral employment contract was either at-will or, alternatively, one incapable of being performed within one year—one of five years' duration. As to the latter type of contract, WERCS

---

1. The jury's finding that there was a contract of employment that required good cause for discharge was also a finding that there was no at-will oral employment contract; however, including the at-will employment question would not be superfluous if it made certain the jury consistently followed all instructions.

asserted the affirmative defense of the statute of frauds, *i.e.*, the contract must be in writing and signed by WERCS, the party to be bound. On appeal, the sole error raised by WERCS is the trial court's ruling, when denying WERCS' summary judgment, that allowed Capshaw to raise at trial the doctrine of substantial performance to counter WERCS' statute of frauds affirmative defense. As we shall show in the discussion that follows, WERCS faces a serious problem created by WERCS' failure to seek special findings on the special verdict form on the factual issues whether the employment contract was at-will; was of more than one year's duration (contract of definite duration); and if it was one of more than one year's duration, whether Capshaw substantially performed. As W.R.C.P. 49(a) and the federal cases referenced above reveal, serious consequences befall a party who omits from a special verdict form issues of fact crucial to that omitting party's litigative success.

### The Correct View of This Case

[¶ 18] Before trial, the district court denied WERCS' motion for summary judgment on Capshaw's breach of employment contract claim. At the conclusion of the hearing on that motion, the district court stated that the statute of frauds, asserted as an affirmative defense by WERCS, and the doctrine of substantial performance, asserted as an exception to the statute of frauds by Capshaw, were at play in the case. Further, the district court concluded that "all of these matters involving substantial performance" presented questions of fact or mixed questions of law or fact for a jury to resolve.

[¶ 19] In the presentation of the case at trial, the parties presented evidence from which the jury had to decide what kind of employment contract this was and what were its terms. The only feature of the contract on which the parties agreed was that it was oral, not written. Capshaw maintains that evidence was received from which a jury could find a contract of indefinite duration, with specified, guaranteed income during the first five years, and at least $100,000 each year thereafter as long as he satisfactorily performed his job duties; he maintains these assurances gave rise to an implied covenant that WERCS would not fire him without good cause. On the other hand, WERCS maintains that evidence was received from which a jury could find an at-will contract for an indefinite term with no covenant that WERCS could fire Capshaw only for cause; and WERCS also maintains that Capshaw presented evidence and argument from which a jury could find a contract of definite duration, namely, a duration of five years. In defense of that type of contract, WERCS pressed the affirmative defense of the statute of frauds. And, in response to that affirmative defense, Capshaw pressed the substantial performance exception to the statute of frauds.

[¶ 20] It was in this posture that the parties submitted the case to the jury. That this is so is unquestionably confirmed by the pertinent instructions of law given by the district court to the jury after the evidence was closed and the parties had rested their case. As we know, a party is entitled to have the jury instructed upon its theory of the case if that theory is supported by competent evidence. *Thunder Hawk v. Union Pacific R. Co.*, 891 P.2d 773, 783 (Wyo. 1995). The jury instructions most pertinent to Capshaw's breach of employment contract claim and WERCS' defenses to that claim included Jury Instructions Nos. 11 through 24. Jury Instruction No. 11 stated the parties' contentions. Jury Instruction No. 12 stated the "at-will" presumption under Wyoming law and Capshaw's burden to prove the existence of a "for cause" employment contract. Jury Instruction No. 13 described the nature of an "at-will" employment. Jury Instruction No. 14 instructed that the parties may alter an "at-will" employment, an express contract may be either written or oral, and an implied for-cause contract may arise from the parties' conduct and an employer's course of dealing. Jury Instruction No. 15 instructed that offer, acceptance, and consideration were the elements of a binding contract; and that the parties' mutual assent, by words or actions, was necessary for contract formation. Jury Instruction No. 15A defined consideration. Jury Instruction No. 16 identified the four elements of the

breach of employment contract claim which Capshaw must prove. Jury Instruction No. 17 instructed that evidence of the terms of the employment contract may be found in the parties' actions after entering into the contract and the parties' performance under the contract. Jury Instruction No. 18 instructed on the statute of frauds and the substantial performance exception to it. Jury Instruction No. 19 explained the concept of substantial performance. Jury Instruction No. 20 explained WERCS' contention about written "at-will" disclaimers signed by Capshaw in 1996 and 1997. Jury Instruction No. 21 instructed that if the jury decided that the parties' employment contract was for a specified time, then WERCS could terminate Capshaw only "for cause;" and the instruction generally, and briefly, explained "for cause." Jury Instruction No. 22 explained removal of a corporate officer by the corporation's board of directors. Jury Instruction No. 23 explained an employer's use of information about a terminated employee obtained after the employee's termination. Jury Instruction No. 24 instructed on recoverable damages if the jury found breach of contract. In these jury instructions, then, the trial court presented the law applicable to the breach-of-employment-contract issues actually raised by the evidence. *Thunder Hawk,* 891 P.2d at 783; *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995). To reiterate, Capshaw maintained that evidence was received from which the jury could find an implied contract of indefinite duration, with specified guaranteed income during the first five years, and at least $100,000 each year thereafter so long as he satisfactorily performed his job duties, and assurances that WERCS would not fire him without good cause. On the other hand, WERCS maintained that evidence was received from which the jury could find either (1) an "at-will" contract for an indefinite term with no covenant that WERCS could fire Capshaw only for cause; or (2) a contract of definite, specified duration, namely, five years. If the jury had found this latter type of contract, then WERCS relied on the statute of frauds jury instruction and Capshaw relied on the substantial performance exception jury instruction.

[¶ 21] As we inspect the special verdict form submitted without objection to the jury along with the jury instructions set forth above, we see that the special verdict form did not ask the jury to find whether the employment contract was either (1) a contract of indefinite duration with an implied "for cause" requirement, as Capshaw maintained; (2) an "at-will" contract of indefinite duration without a "for cause" requirement, as WERCS maintained; (3) a contract of definite, specified five years' duration, as WERCS alternatively maintained; or (4) if it was a contract of definite duration, then whether Capshaw substantially performed. Instead, the special verdict form asked only whether there existed an employment contract requiring good cause for discharge. And, as we have noted earlier, the jury answered in the affirmative. It is, then, at this point that we must apply W.R.C.P. 49(a)'s provisions and the understanding of those provisions which the federal cases give us. WERCS' sole issue on appeal is that the trial court's summary judgment ruling—which allowed Capshaw to raise at trial the substantial performance exception to WERCS' affirmative defense of the statute of frauds—resulted in the special verdict and judgment entered against WERCS at trial. But we do not know that and we will never know that because WERCS did not seek the jury's special written finding upon whether the contract was of definite duration and whether Capshaw substantially performed. By not submitting those issues of fact to the jury on the special verdict form and by not demanding their submission to the jury before it retired, WERCS waived its right to have those issues tried by the jury. W.R.C.P. 49(a); *Hyde v. Land–of–Sky Regional Council,* 572 F.2d at 991. The trial court is deemed to have made a finding on those issues in accord with the judgment on the special verdict. *Id.* As further explained in *Ansin v. River Oaks Furniture, Inc.,* addressing the defendant's failure to submit affirmative defense issues on the special verdict form:

Under Rule 49(a), if the district court does not make a finding on an issue not submitted to the jury, "it will be presumed

on appeal that the lower court made whatever finding was necessary in order to support the judgment that was entered." 9A Wright & Miller, *Federal Practice and Procedure*, § 2507, at 185–86 (1995); *see also Kavanaugh v. Greenlee Tool Co.*, 944 F.2d 7, 11–12 (1st Cir.1991). As the district court entered a judgment for the plaintiffs, we presume that it found that defendants had not proven the claimed equitable defenses.

105 F.3d at 756.

[¶ 22] Applying this understanding of Rule 49(a)'s provisions to WERCS' appeal, because the trial court did not make a finding on the issues of fact not submitted by WERCS to the jury—whether the employment contract was one of definite duration of more than one year and thus within the statute of frauds and whether Capshaw substantially performed—we presume on appeal that the trial court made whatever finding was necessary in order to support the judgment that was entered. As the trial court entered a judgment for Capshaw, we presume that the trial court found that WERCS had not proven the claimed defenses and affirmative defenses. *Accord, AG Systems, Inc. v. United Decorative Plastics Corp.*, 55 F.3d at 974. The proper standard of review requires this Court to adopt a view of the case that makes the jury's answers in the special verdict form consistent. *Hiltgen v. Sumrall*, 47 F.3d at 701. Based upon the evidence and the jury instructions, the jury could have found that a "for cause" employment contract existed, without ever finding that it was for a definite term of more than one year which would be within the statute of frauds, and without ever having to find whether Capshaw substantially performed. Thus, the trial court's pre-trial summary judgment rulings of which WERCS' complains actually played no part in the jury's special verdict. We affirm the judgment entered on the jury's special verdict in all respects.

LEHMAN, Justice, concurring.

[¶ 23] I concur with the majority's discussion of W.R.C.P. 49(a) and the consequences that befall a party who fails to include crucial factual issues on the special verdict form. I also agree that, because the special verdict form failed to specify on what grounds the jury found a for-cause contract, it is possible that the jury did not find a five-year contract or rely on substantial performance. I, therefore, do not dispute that WERCS faces the problems on appeal that the majority outlines. However, I believe that some may read the majority opinion as embracing the district court's determination that substantial performance can be applied in employment cases. To any extent the opinion may be read that way, I do not agree.

[¶ 24] As noted by the majority, the district court specifically found that the substantial performance exception was at play in this case. ¶ 18. Throughout the opinion the majority references WERCS' obligation to submit certain findings to the jury, one of which is if the contract was of definite duration whether Capshaw substantially performed. Specifically, in ¶ 21 the majority says: "By not submitting those issues of fact to the jury on the special verdict form and by not demanding their submission to the jury before it retires, WERCS waived its right to have those issues tried by the jury. W.R.C.P. 49(a)." It is these statements that cause me concern. Even though the opinion is correct to hold WERCS responsible for not including those specific findings on the verdict form under the circumstances of this case, I would clarify that we have never endorsed the proposition that substantial performance can be applied to save an employment contract from the statute of frauds.

[¶ 25] It is certainly true that "[w]hether or not [a party] substantially performed under the agreements is a question of fact." *Ferguson v. Reed*, 822 P.2d 1287, 1290 (Wyo.1991). As such, in instances in which substantial performance can be used as an exception to the statute of frauds, such a finding is a proper question for the jury. However, there is some doubt that the substantial performance doctrine is applicable in the context of employment contracts. This is due to the fact that when a contract of employment states a definite duration, dismissal only for cause is presumed. *Wilder v. Cody Country Chamber of Commerce,*

868 P.2d 211, 217 (Wyo.1994). To be entitled to this presumption, however, a party must be able to overcome the two restrictions incorporated in the presumption, one of which is "performance under a contract of definite duration is within the statute of frauds, Wyo. Stat. § 1–23–105 (1988), making evidence of a writing necessary if the terms are not performed within one year." *Id.,* at 218.

[¶ 26] The doctrine of substantial performance is an equitable exception to the statute of frauds. *Fowler v. Fowler,* 933 P.2d 502, 504 (Wyo.1997). The purpose of the doctrine of substantial performance is to assure that a party who has performed under an oral agreement is not denied the benefit of that performance under the guise of the statute of frauds or where it is impractical to compensate the performing party for the value of his performance. *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d 429, 439 (Tex. App.2002); *see also Davis v. Davis,* 855 P.2d 342, 346 (Wyo.1993); *Fischer v. First Chicago Capital Markets, Inc.,* 195 F.3d 279 (7th Cir.1999).

[¶ 27] Normally, in cases of substantial performance, the performance of the obligations imposed by the contract provides evidence of the existence of the parties' intent to enter a contractual relationship. Such is not generally the case with employment contracts. *See Dumas v. Auto Club Ins. Assoc.,* 437 Mich. 521, 473 N.W.2d 652, 660–661 (1991). When considering exceptions to the statute of frauds, it is important to be mindful of the purpose of the statute of frauds. The statute of frauds is designed to prevent the enforcement of alleged promises that never were made. *Metz Beverage Co. v. Wyoming Beverages, Inc.,* 2002 WY 21, ¶ 18, 39 P.3d 1051, ¶ 18 (Wyo.2002). In general terms, the statute of frauds requires that contracts of a certain type be shown by trustworthy evidence to avoid the uncertainty of casual promises and parol testimony. *See generally Fowler v. Fowler,* 933 P.2d 502; *Yates v. Ball,* 132 Fla. 132, 181 So. 341, 344 (1937).

[¶ 28] Thus, when substantial performance applies, the parties' performance serves as proof of the parties' intent under the contract. The performance should be generally referable to the asserted contract and nothing else. *Rowland v. Ewell,* 174 So.2d 78, 80 (Fla.App.1965); *Exxon Corp. v. Breezevale Ltd.,* 82 S.W.3d at 439; *Spears v. Warr,* 44 P.3d 742, 751 (Utah 2002). While part performance of an employment contract may certainly reference a term-of-years contract, it may just as easily also reference an at-will employment relationship. Performance in these instances does nothing to establish the terms of the employment agreement. "Performance will remove an alleged contract from operation of the statute of frauds only when it is unequivocally referable to that contract." *Throndson v. Comm'r of Internal Rev.,* 457 F.2d 1022, 1026 (9th Cir. 1972).

[¶ 29] The Supreme Court of Minnesota has stated: "[I]t is generally held that the uncompleted part performance of an oral contract for employment, not to be performed within 1 year, does not take the contract out of the statute of frauds." *Roaderick v. Lull Engineering Co., Inc.,* 296 Minn. 385, 208 N.W.2d 761, 763 (1973); *see also Rowland v. Ewell,* 174 So.2d 78, 80 (Fla.App.1965). If it were otherwise, every employment contract would be affected and at-will employment would be turned on its head. Allowing performance in the form of employment, to act as a bar to the statute of frauds would render the relevant provision of the statute of frauds meaningless. Any contract where the employee had begun work and received a paycheck would be protected from the application of that statute. *Payne v. Mill Race Inn,* 152 Ill.App.3d 269, 105 Ill.Dec. 324, 504 N.E.2d 193, 199–200 (1987) (explaining the holding in *Mapes v. Kalva Corp.,* 68 Ill.App.3d 362, 24 Ill.Dec. 944, 386 N.E.2d 148 (1979)). Thus, it appears the doctrine of substantial performance cannot be used as an exception to the statute of frauds in the context of employment contracts.

[¶ 30] As such, I do not embrace the district court's summary judgment ruling. However, because we do not know on what grounds the jury found, because WERCS did not seek the jury's special written finding on whether the contract was of definite duration

and whether Capshaw substantially performed, I concur.